**RYAN W. STITT**
California State Bar No. 273651
**TOMMY H. VU**
California State Bar No. 273760
**STITT VU TRIAL LAWYERS APC**
185 W F St., Ste. 100-K
San Diego, California 92101
Telephone: (619) 255-0553
rstitt@stittvu.com
tvu@stittvu.com

**TIMOTHY A. SCOTT**
California State Bar No. 215074
**MARCUS S. BOURASSA**
California State Bar No. 316125
**MCKENZIE SCOTT PC**
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
tscott@mckenziescott.com
mbourassa@mckenziescott.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ANNETTE MATTIA; FLOYD MATTIA; MITCHELL MATTIA; FRED MATTIA; DELORES HEREDRIA; ARIEL MATTIA; and RAYMOND MATTIA JR., in their individual capacities and on behalf of the Estate of RAYMOND MATTIA,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA; DOE BORDER PATROL AGENTS 1-30, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1) *Bivens*: Excessive Force;<br>2) *Bivens*: Familial Association;<br>3) FTCA: Assault;<br>4) FTCA: Battery;<br>5) FTCA: Negligence;<br>6) FTCA: Wrongful Death;<br>7) FTCA: Intentional Infliction of Emotional Distress; and<br>8) FTCA: Aggravated Negligence.<br><br>**DEMAND FOR JURY TRIAL ON NON-FTCA CLAIMS** |

## I.   INTRODUCTION.

1. This action seeks justice for Raymond Mattia, who was unarmed in front of his home, when Border Patrol Agents shot and killed him for no reason.



2. On May 18, 2023, Agents arrived at Mr. Mattia's home at about 9:30 p.m. in response to a call saying that someone heard what sounded like two gunshots about thirty minutes prior.

3. The dispatcher reported two "shots being heard" but that "[n]obody can pinpoint where it came from."

4. Agents believed the shots may have been from a rifle, but at no point did the Agents hear shots fired, see a rifle, or observe any signs of distress upon their arrival in the area about 30 minutes after the reported shots.

5. A group of Agents approached Mr. Mattia's home and Mr. Mattia exited to greet them. At least one of the agents was pointing a gun at Mr. Mattia from the moment they saw him and before they even spoke.

6. Mr. Mattia was carrying a sheathed hunting knife. One of the Agents told him to drop it and he complied - tossing it underhand (and sheathed) away from

himself in a non-threatening manner.

7. Despite Mr. Mattia's compliance and non-threatening demeanor, the other agents drew their weapons and screamed conflicting and frantic commands.

8. One agent yelled "[g]et on your fucking face."

9. Another ordered Mr. Mattia to "[p]ut your hands out of your fucking pocket."

10. Mr. Mattia's right hand was in his jacket pocket, and he complied by removing his hand from his pocket toward his right side and away from the Agents.

11. Mr. Mattia was holding a cellphone in his hand.

12. Mr. Mattia was fully compliant, unarmed and posed no threat to the Agents or anyone else. There was no evidence Mr. Mattia had been the subject of the earlier call or otherwise concealing evidence of any crime.

13. Despite the lack of a threat and his compliance, at least three of the Agents met his compliant calm demeanor with a hail of gunfire.

14. Agents ordered him to drop the sheathed knife – which he did. Seconds later they ordered him to take his hand out of his pocket – which he did. In response, the agents immediately killed him.

15. The agents shot and killed Mr. Mattia in his own front yard almost immediately after exiting his home to greet them.

## II.     JURISDICTION AND VENUE.

16. This is a civil action where jurisdiction is founded on a federal question under 28 U.S.C. § 1331.

17. Plaintiffs' claims arise in this judicial district where the events giving rise to the Complaint occurred, namely Menagers Dam Village in the Tohono O'odham Nation, which is situated in the District of Arizona.

18. Venue is proper in the United States District Court for the District of Arizona under 28 U.S.C. § 1391.

19. Plaintiffs timely served Defendants with an administrative claim under 28 U.S.C. §§ 1346, and 2671-80 (the Federal Tort Claims Act), on or about

November 15, 2023. The United States denied the claims on or about February 23, 2024.

### III.  PARTIES.

20. Plaintiffs are Mr. Mattia's siblings and children. Specifically:
    a. Annette Mattia is Mr. Mattia's sister.
    b. Floyd Mattia is Mr. Mattia's brother.
    c. Mitchell Mattia is Mr. Mattia's brother.
    d. Fred Mattia is Mr. Mattia's brother.
    e. Delores Heredria is Mr. Mattia's sister.
    f. Ariel Mattia is Mr. Mattia's daughter.
    g. Raymond Mattia Jr. is Mr. Mattia's son.

21. Each plaintiff loved Raymond, had an intimate familial relationship with Raymond and was harmed by his death, which has left a hole in their family.

22. Raymond Mattia's children bring claims individually and as successors in interest for the Estate of Raymond Mattia.

23. At all times relevant herein, Border Patrol was a sub-agency of the Department of Homeland Security, which in turn is an agency of the Defendant United States of America.

24. Defendants Doe Border Patrol Agents 1-30 ("Doe Agent(s)"), at all times relevant herein, were officers and/or agents of the Border Patrol. The true names of these agents are currently unknown. These Defendants were on duty on May 18, 2023, and responded to Raymond Mattia's home. These Defendants include, but are not limited to, the Border Patrol Agents who shot at and killed Raymond Mattia. At all times herein, these Defendants were acting in an official capacity and under the color of law.

### IV.  FACTS SUPPORTING CAUSES OF ACTION.

25. On May 18, 2023, a Tohono O'odham Police Department ("TOPD") despatcher contacted Border Patrol and requested assistance for a report of two shots fired

in the area of Menagers Dam Village at about 9:00 p.m.

26. Menagers Dam Village is in the Tohono O'odham Nation. It is a small rural town about 100 miles southwest of the Tucson airport and about a mile north of the international border with Mexico.

27. The dispatcher reported that the shots were heard, they were believed to be from a rifle, and "[n]obody can pinpoint where it came from."

28. Border Patrol Agents agreed to respond and arrived in Menagers Dam Village at about 9:30 p.m.

### A. From Its Inception, the Large Group Investigation Lacked a Reasonable Plan and the Agents' Eagerness to Employ Violence Posed an Immense Danger to Mr. Mattia's Community.

29. Doe Agents arrived at the Menagers Dam Village Recreational Center and met with at least one TOPD Officer. One of the Officers stated that they were looking for someone who had fired a rifle and that "[i]t's going to be a little bit of a guessing game trying to find [the suspect.]" He followed up by saying "I don't know exactly where that motherfucker's at."

30. At no point during the meeting at the Recreation Center did any of the Officers or Agents overhear shots being fired or hear anyone in distress. It was a quiet, clear night.

31. After conferring at the Menagers Dam Village Recreational Center with TOPD about the gunshot sounds heard in the vague direction of half the town approximately 30 minutes earlier, the Doe Agents lacked even reasonable suspicion from which to detain anyone in the region of Mr. Mattia's home, let alone detain Mr. Mattia personally or use *any* force against him. The Doe Agents lacked adequate information to support an arrest or a criminal charge against anyone. Nor did the Doe Agents have any reasonable basis to believe members of the public were actively in danger or that there was any emergency or exigency necessitating a hurried intervention.

32. Nonetheless, the Agents donned body armor, assault rifles and night vision

goggles and headed out to in search of an unidentified suspect.

33. The Agents, including at least Does One through Seven, approached the area of Mr. Mattia's neighbor's home in a convoy of approximately seven vehicles.

34. On information and belief, the Doe Agents did not have a particular investigative plan beyond exploring a wide area and seeing whether they could find anything or anyone of interest.

35. After exploring the area of several other homes and buildings for several minutes, the Doe Agents had no new information, no new investigative leads, and no new suspects.

36. Doe Agents in the vicinity of Mr. Mattia's home wandered and spread out across a large, dark and rural area shining flashlights into windows and randomly exploring.

37. They did not hear gunshots. They did not hear screams. They did not hear calls for help. They did not seek or encounter any complaining witnesses or victims. They observed no guns, found no spent ammunition, and found no sign that anything unusual (let alone criminal) had happened in the area.

38. After several minutes exploring the neighborhood and surrounding yards and wilderness, a TOPD officer and Doe Agents approached Raymond Mattia's home.

**B.   The Agents Immediately Resort to Threatening, Then Using, Deadly Force Against a Cooperative Man in Front of His House.**

39. The Agents had no specific, articulable suspicion of Mr. Mattia (or any particular person in his neighborhood).

40. None of the Doe Agents had any reasonable basis to fear Mr. Mattia posed a danger to anyone.

41. At all relevant times, Mr. Mattia was calm, cooperative, compliant, and immediately obeying commands.

42. At no time did Mr. Mattia say or do anything that a reasonable person could

interpret as threatening or dangerous.

43. Given how little they knew of any alleged crime and the absence of suspicion, Agents' only lawful investigative tool while interacting with Mr. Mattia would have been a consensual encounter and possible interview as a witness to the reported noises in the region earlier.

44. Nonetheless, Doe Agent 1 drew a handgun and immediately aimed it at Raymond Mattia as he approached Mr. Mattia's home and before he uttered a word.

45. Mr. Mattia likely heard unidentified people wandering in the dark outside his home.

46. Mr. Mattia exited the home and stood directly in front of his home to determine who was outside and to greet the agents. When he exited, Mr. Mattia had his hand in his pocket and was holding a sheathed hunting knife.

47. At least Does 1 through 3, a TOPD officer and possibly others shined bright flashlights on Mr. Mattia and in his eyes.

48. On information and belief, Mr. Mattia could not immediately identify the Agents or TOPD officer outside his home as members of law enforcement.

49. On information and belief, none of the Doe Agents or TOPD identified themselves to Mr. Mattia or explained their reason for coming to his home.

50. When abruptly ordered to drop the sheathed knife, Mr. Mattia used a non-threatening, underhanded toss to surrender the sheathed knife to TOPD and the Doe Agents.

51. Mr. Mattia was not holding a rifle or any type of weapon and was fully, immediately compliant with all instructions.

52. After surrendering the sheathed knife, Mr. Mattia did not pose any reasonable danger to the Agents or anyone else. He was alone, unarmed, calm, and following commands.

53. However, Doe Agent 1 did not lower or holster his firearm.

54. None of the Doe Agents present intervened to stop Doe 1 from threatening deadly force against a compliant member of the public.

55. Instead, Doe Agents 2 and 3, and possibly others, also drew their firearms and aimed them at Mr. Mattia.

56. One of the Doe Agents ordered him to comply with commands and he responded by saying, "I am."

57. One of the Doe Agents, on information and belief, Doe Agent 1, 2, or 3, screamed at Mr. Mattia to "[g]et on your fucking face."

58. Another Doe Agent yelled a conflicting command and told Mr. Mattia to "[p]ut your hands out of your fucking pocket."

59. Mr. Mattia complied and promptly removed his right hand from his jacket pocket.

60. The Doe Agents could see Mr. Mattia clearly as he removed his hand from his pocket away from his body.

61. Nothing about Mr. Mattia's removal of his hand from his pocket or movements was threatening or could reasonably place the Agents in fear for themselves or public safety.

62. Mr. Mattia did not move his hand toward the Agents or assume a firing position.

63. Mr. Mattia held only a cellphone in his hand when he complied with commands by removing it from his pocket.

64. Mr. Mattia was not reasonably suspected of any crime, was unarmed, was compliant, and immediately obeyed the Agents commands despite having little opportunity to evaluate who they were or determine whether they were even members of law enforcement.

65. There was no reasonable basis for aiming a weapon at Mr. Mattia or even for detaining him in connection with the Agents' investigation.

66. Nonetheless, after Mr. Mattia removed his hand from his pocket, as instructed, Doe Agents 1, 2, and 3, (and possibly others) immediately opened fire.

67. The Doe Agents fired dozens of rounds.
68. Each and every round fired was unreasonable and was not based upon a real threat to public safety or even a reasonable fear for public safety.
69. Mr. Mattia suffered nine or ten gunshot wounds.
70. Mr. Mattia was pronounced dead on the scene.
71. Annette Mattia lives next to Raymond Mattia's home, and she was in her home when the Doe Agents fired dozens of rounds, killing her brother.
72. Annette Mattia overheard the shooting.
73. She could have been struck by the shots fired by Border Patrol Agents, and she suffered severe emotional distress at hearing her brother killed and fearing for her own life as well.

## V.    CAUSES OF ACTION.

### FIRST CAUSE OF ACTION:

*Bivens*: **Excessive Force**

**(The Estate of Raymand Mattia Against Doe Agents 1 through 30)**

74. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.
75. This cause of action is based upon *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
76. Plaintiff had a Fourth Amendment right to be free from unreasonable searches and seizures, including the use of excessive force.
77. Defendants violated that right by shooting and killing Mr. Mattia.
78. These Defendants were not acting in good faith, were acting under color of law, and violated Mr. Mattia's Fourth Amendment rights.
79. These Defendants are sued in their individual capacities for the purposes of this cause of action.
80. Defendants' actions were the legal, foreseeable, and proximate cause of Plaintiffs' injuries, and caused damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION:

***Bivens*: Deprivation of Right to Familial Association**

**(All Plaintiffs Against Doe Agents 1 through 30)**

81. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

82. This cause of action is based upon *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

83. Plaintiffs had constitutionally protected rights to familial association with Raymond Mattia, including as enshrined in the First and Fourteenth Amendments.

84. Defendants violated that right by shooting and killing Mr. Mattia – immediately and unlawfully severing plaintiffs' intimate and expressive family relationships with their siblings, father, and children.

85. These Defendants were not acting in good faith, were acting under color of law, and violated Mr. Mattia's constitutional rights as well as those of his family and other plaintiffs.

86. These Defendants are sued in their individual capacities for the purposes of this cause of action.

87. Defendants' actions were the legal, foreseeable, and proximate cause of Plaintiffs' injuries, and caused damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION:

**FTCA: Assault**

**(The Estate of Raymand Mattia Against All Defendants)**

88. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

89. Defendants created a reasonable apprehension in Mr. Mattia of immediate harmful or offensive contact. Specifically, Defendants drew their weapons and pointed them at Mr. Mattia when he posed no threat and was compliant with

their commands.

90. Mr. Mattia reasonably believed that he was going to be shot by Defendants.

91. Defendants in fact fired multiple times at Mr. Mattia, striking him nine times and killing him.

92. Defendants acted without privilege or Mr. Mattia's consent.

93. Defendants acted in their official capacity and in the scope of their employment as Border Patrol agents of the United States of America.

94. Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk of harm to Plaintiffs.

95. Defendants' actions were a substantial factor in causing harm to Mr. Mattia, and Plaintiffs seek all damages available under the law including punitive damages for the harm caused by Defendants.

## FOURTH CAUSE OF ACTION:
### FTCA: Battery
**(The Estate of Raymand Mattia Against All Defendants)**

96. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

97. Defendants created a reasonable apprehension in Mr. Mattia of immediate harmful or offensive contact. Specifically, Defendants drew their weapons and pointed them at Mr. Mattia when he posed no threat and was compliant with their commands.

98. Defendants acted with an intent to cause harmful or offense contact with Mr. Mattia.

99. The intended harmful or offensive contact did occur. Specifically, Defendants shot and killed Mr. Mattia without just cause.

100. Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk

of harm to Plaintiffs.

101. Defendants acted without privilege or Mr. Mattia's consent.

102. Defendants acted in their official capacity and in the scope of their employment as Border Patrol Agents of the United States of America.

103. Defendants' actions were a substantial factor in causing harm to Mr. Mattia, and Plaintiffs seek all damages available under the law including punitive damages for the harm caused by Defendants.

## FIFTH CAUSE OF ACTION:

### FTCA: Negligence

**(The Estate of Raymand Mattia Against All Defendants)**

104. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

105. Defendants had a duty to use reasonable care in interacting with a citizen. Defendants had a duty to use reasonable care in planning, coordinating, and executing their investigative work. They also had a duty to use reasonable care in the deployment of deadly weapons, orders to the public, and the use of deadly force. They also had a duty to use reasonable care by stopping firing once shooting began.

106. Defendants breached these duties by engaging in an unnecessarily dangerous unplanned and frantic search in the absence of exigency, aiming deadly weapons at Mr. Mattia, failing to calmly communicate with Mr. Mattia, detaining Mr. Mattia at all, failing to intervene as others aimed and shot deadly weapons at Mr. Mattia, and by shooting and killing Mr. Mattia when he was unarmed and standing in front of his home complying with their commands. Defendants further breached their duties of reasonable care by firing without an appropriate need to fire and by failing to stop shooting immediately.

107. Defendants' actions caused Mr. Mattia substantial harm, pain, suffering, and death. Their actions were outrageous and intolerable, and they unreasonably or

1. intentionally disregarded a substantial risk of harm to Plaintiffs.
108. Defendants acted in their official capacity and in the scope of their employment as Border Patrol Agents of the United States of America.
109. Defendants' actions were a substantial factor in causing harm to Mr. Mattia, and Plaintiffs seek all damages available under the law including punitive damages for the harm caused by Defendants.

## SIXTH CAUSE OF ACTION:
### FTCA: Wrongful Death
**(The Estate of Raymond Mattia, Ariel Mattia, and Raymond Mattia Jr. Against All Defendants)**

110. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.
111. Defendants shot and killed Mr. Mattia in front of his home when he was unarmed and compliant.
112. Defendants did not reasonably act in self-defense and they acted recklessly when they shot and killed Mr. Mattia.
113. Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk of harm to Plaintiffs.
114. Defendants acted in their official capacity and in the scope of their employment as Border Patrol Agents of the United States of America.
115. Defendants' actions were a substantial factor in causing harm to Mr. Mattia, and Plaintiffs seek all damages available under the law including punitive damages for the harm caused by Defendants.

### SEVENTH CAUSE OF ACTION:

### FTCA: Intentional Infliction of Emotional Distress

### (The Estate of Raymond Mattia and Annette Mattia Bring This Cause of Action Against All Defendants)

116. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

117. Defendants engaged in extreme and outrageous conduct that transcended the bounds of human decency. Specifically, Defendants shot and killed Mr. Mattia in front of his home when he was unarmed and compliant.

118. Defendants intended to cause, and did cause, Mr. Mattia to experience severe physical injury and emotional distress and each acted with a reckless disregard of the probability that Mr. Mattia, and Plaintiffs, would suffer injury.

119. Plaintiffs suffered severe emotional distress as a result of the Defendants' reckless and intentional outrageous conduct.

120. Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk of harm to Plaintiffs.

121. Defendants acted in their official capacity and in the scope of their employment as Border Patrol Agents of the United States of America.

122. Defendants' actions were a substantial factor in causing harm to Mr. Mattia, and Plaintiffs seek all damages available under the law including punitive damages for the harm caused by Defendants.

### EIGHTH CAUSE OF ACTION:

### FTCA: Aggravated Negligence

### (The Estate of Raymand Mattia Brings This Cause of Action Against All Defendants)

123. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

124. Defendants acted with willful and wanton conduct, and with reckless indifference to the safety of others when they drew their weapons and pointed them at Mr. Mattia and fired an unknown number of shots at him and his home.

125. Defendants' actions created an unreasonable risk of harm to Mr. Mattia and others.

126. Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally disregarded a substantial risk of harm to Plaintiffs.

127. The risk of harm created by Defendants was great because they fired many shots at Mr. Mattia when he was unarmed and compliant, and they fired shots at his home.

128. Defendants acted in their official capacity and in the scope of their employment as Border Patrol Agents of the United States of America.

129. Defendants' actions were a substantial factor in causing harm to Mr. Mattia, and Plaintiffs seek all damages available under the law including punitive damages for the harm caused by Defendants.

## **PUNITIVE DAMAGES:**
### **(All Defendants)**

130. Plaintiffs reassert, re-allege, and incorporate herein by reference each and every allegation contained in the preceding paragraphs.

131. By intentionally shooting and killing Mr. Mattia without reason, Defendants' actions were intended to cause harm, their actions were outrageous and intolerable, and they intentionally or recklessly disregarded a substantial risk of harm to Plaintiffs.

132. Defendants' despicable conduct resulted in Mr. Mattia's death, and Plaintiffs have suffered severe emotional harm as a result. Defendants are therefore liable for punitive damages.

## VI.  RELIEF REQUESTED.

133. For general damages and compensatory damages in an amount according to proof;
134. For punitive damages against the individual Defendants;
135. Civil penalties as provided by law;
136. Monetary damages as provided by law;
137. Legal interest on all damages awards from the date of judicial demand until paid;
138. Costs of suit;
139. And for such other and further relief as the Court may deem proper.

## VII.  JURY DEMAND.

140. Plaintiff hereby respectfully demands that a trial by jury be conducted with respect to all non-FTCA issues presented herein.

Dated:  May 16, 2024    Respectfully submitted,

*s/Timothy A. Scott*
Timothy A. Scott
Marcus S. Bourassa
MCKENZIE SCOTT PC

Tommy H. Vu
Ryan W. Stitt
STITT VU TRIAL LAWYERS APC

Attorneys for Plaintiffs