1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9    Annette Mattia, et al.,

10            Plaintiffs,

11    v.

12    United States of America, et al.,

13            Defendants.

14

No. CV-24-00252-TUC-RM

**ORDER**

15       Pending before the Court are Motions to Dismiss filed by Defendants United

16    States of America, Scott Whitehouse, Dan Sifuentes, and Ivan Torralva.  (Docs. 28, 31.)

17    The Motions are fully briefed (Docs. 29, 30, 32, 33, 34, 35), and the Court finds them

18    suitable for resolution without oral argument.

19    **I.    Background**

20       Plaintiffs Annette Mattia, Floyd Mattia, Mitchell Mattia, Fred Mattia, Delores

21    Heredria Mattia, Ariel Mattia, Raymond Mattia Jr., and the Estate of Raymond Mattia[1]

22    filed a Complaint on May 16, 2024, against the United States and unknown Border Patrol

23    Agents, asserting claims under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six*

24    *Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), arising

25    from the death of Raymond Mattia, who was shot by United States Border Patrol agents

26    on May 18, 2023.  (Doc. 1.)

27    _____

28    [1] Because all Plaintiffs have the same last name, the Court will refer to each Plaintiff by
his or her first name to reduce confusion.  The Court will refer to Raymond Mattia by his
full name and will refer to Raymond Mattia Jr. as Raymond Jr.  The Court will refer to
the Estate of Raymond Mattia as the Estate.

On November 21, 2024, the Court partially granted and partially denied a Motion to Dismiss filed by the United States. (Doc. 20.) The Court dismissed all defendants except the United States from Plaintiffs' FTCA claims; dismissed Plaintiffs' claim for punitive damages against the United States; dismissed the Estate as a plaintiff with respect to the wrongful death claim asserted in the Complaint; and dismissed all survival claims brought by the Estate without prejudice to reinstating the claims once a personal representative of the Estate had been appointed. (*Id.* at 3-5, 7-8.) The Court declined to dismiss Annette's intentional infliction of emotional distress claim, finding that Plaintiffs' administrative claim provided sufficient notice and that the allegations of the Complaint were sufficient to state a plausible claim to relief. (*Id.* at 5-8.)

On December 12, 2024—after disclosure of the names of the Border Patrol officers who shot Raymond Mattia and following the appointment of Raymond Jr. as the personal representative of the Estate—Plaintiffs filed a First Amended Complaint ("FAC"). (Doc. 24.) In the FAC, Plaintiffs assert FTCA claims against the United States and *Bivens* claims against Border Patrol agents Whitehouse, Sifuentes, and Torralva ("the Individual Defendants"). (*Id.*) The United States moves to dismiss Counts Three, Four, Five, Seven, and Eight of the FAC under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 28.) The Individual Defendants move to dismiss Counts One and Two under Rule 12(b)(6). (Doc. 31.)

## II.    Allegations of Plaintiffs' FAC

In their FAC, Plaintiffs allege the following.

On May 18, 2023, Border Patrol agents arrived at Raymond Mattia's home at around 9:30 p.m. in response to a report of gunshots in the vicinity. (Doc. 24 at 2 ¶¶ 2-3.) Raymond Mattia exited his home to greet the agents. (*Id.* at 2 ¶ 5.) At least one of the agents immediately pointed a firearm at Raymond Mattia, even though there was no evidence that Raymond Mattia was a suspect in the report of shots fired. (*Id.* at 2-3 ¶ 5, 12.) Raymond Mattia was carrying a sheathed hunting knife, which he tossed away from himself when an agent told him to drop it. (*Id.* at 2-3 ¶ 6.) Despite Raymond Mattia's

compliance, agents drew their weapons and began screaming frantic, conflicting commands. (*Id.* at 3 ¶ 7.) One agent yelled "[g]et on your fucking face," while another yelled "[p]ut your hands out of your fucking pocket." (*Id.* at 3 ¶¶ 8-9.) Raymond Mattia removed his hand from his pocket in compliance with the command to do so. (*Id.* at 3 ¶ 10.) He was holding a cellphone. (*Id.* at 3 ¶ 11.) Even though Raymond Mattia was unarmed, compliant, and posed no threat to the agents or anyone else, at least three agents fired a hail of gunfire at him, killing him in his front yard almost immediately after he had exited his home to greet them. (*Id.* at 3 ¶¶ 12-15.)

In Count One of the FAC, the Estate asserts a *Bivens* claim for excessive force against the Individual Defendants. (*Id.* at 9-10 ¶¶ 75-81.) In Count Two, all Plaintiffs assert a *Bivens* claim for deprivation of the right to familial association against the Individual Defendants. (*Id.* at 10-11 ¶¶ 82-88.) In Counts Three, Four, Five, and Eight, the Estate asserts FTCA claims against the United States for assault, battery, negligence, and aggravated negligence. (*Id.* at 11-13, 15 ¶¶ 89-110, 124-130.) In Count Six, Ariel and Raymond Jr. assert an FTCA claim against the United States for wrongful death. (*Id.* at 13-14 ¶¶ 111-116.) In Count Seven, the Estate and Annette assert an FTCA claim against the United States for intentional infliction of emotional distress. (*Id.* at 14-15 ¶¶ 117-123.)

### III.    Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint need not include "detailed factual allegations," it must contain more than labels, conclusions, "and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In evaluating a Rule 12(b)(6) motion to dismiss, the court must take as true all well-pleaded factual allegations of the complaint and construe them in the light most favorable to the nonmovant. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, the court need not accept as true legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678.

An attack on jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* A Rule 12(b)(1) motion arguing a failure to exhaust administrative remedies under the FTCA constitutes a factual attack on jurisdiction. *See Earley v. United States*, No. 3:22-cv-00697-SB, 2023 WL 2245669, at *1 (D. Or. Jan. 27, 2023). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. The party asserting jurisdiction bears the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## IV.    Discussion

The Court first addresses the United States' Motion to Dismiss the FTCA claims asserted in the FAC, and then addresses the Individual Defendants' Motion to Dismiss the *Bivens* claims.

### A. United States' Motion to Dismiss

The United States argues that the Estate's survival claims must be dismissed to the extent they seek damages for pre-death pain and suffering; that the Estate's negligence

claim fails as a matter of law because the FAC alleges intentional use of force; that the Estate's aggravated negligence claim is not cognizable under Arizona law; and that this Court lacks subject-matter jurisdiction over the Estate's survival claims and Annette's intentional infliction of emotional distress claim because Plaintiffs' administrative claim does not satisfy the sum certain requirements of 28 U.S.C. § 2675.  (Doc. 28.)

### 1.  Pre-Death Pain and Suffering

The United States argues that Arizona's survival statute excludes damages for pain and suffering and limits damages on Plaintiffs' survival claims to those sustained by Raymond Mattia during the brief period between his initial injury and death.  (Doc. 28 at 5-7.)  The United States further argues that the Court should dismiss the survival claims asserted in Counts Three, Four, Five, Seven, and Eight of the FAC because Plaintiffs do not allege that Raymond Mattia suffered any damages other than pain and suffering during that period.  (*Id.*)  In response, Plaintiffs do not dispute that Arizona's survival statute precludes recovery of pain-and-suffering damages, but they contend that the limitation on recovery is unenforceable in this action.  (Doc. 29 at 4-7.)

Under the FTCA, the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, "in accordance with the law of the place where the act or omission occurred," *id.* § 1346(b)(1).  The alleged acts or omissions at issue occurred on the Tohono O'odham reservation, but the parties do not dispute that Arizona law applies.  *See Ben v. United States*, No. CV 04-1850-PCT-PGR, 2007 WL 1461626, at *3 (D. Ariz. May 16, 2007) ("when the alleged act or omission occurred on a tribal reservation, the law of the place is the law of the state where the alleged negligence occurred" (internal quotation marks omitted)); *Bryant v. United States*, 147 F. Supp. 2d 953, 959–60 (D. Ariz. 2000) (same). Arizona's survival statute allows a decedent's estate to recover damages "sustained by the decedent from the time of injury until [his] death," *Gandy v. United States*, 437 F. Supp. 2d 1085, 1087 (D. Ariz. May 31, 2006), but it precludes recovery of damages for the decedent's pain and suffering, A.R.S. § 14-3110.

In support of their argument that the survival statute's limitation on recovery of pain-and-suffering damages is unenforceable, Plaintiffs rely exclusively on cases involving claims brought under 42 U.S.C. § 1983.  But in § 1983 actions, state-law survival remedies apply only if they are not "inconsistent with the Constitution and laws of the United States," including the federal policy underlying § 1983 actions.  *Robertson v. Wegmann*, 436 U.S. 584, 589–90 (1978).  Plaintiffs identify no similar restriction that exists with respect to the application of state law in FTCA claims.  Instead, the FTCA unequivocally adopts state tort law.  *See* 28 U.S.C. § 1346(b)(1); *see also Est. of Madden v. Lockhart*, No. 03-CV-346-TUC-JMR, No. 04-CV-304-TUC-JMR, 2009 WL 10707940, at *5 n.7 (D. Ariz. Mar. 17, 2009) (recognizing that Arizona's exclusion of pain-and-suffering damages in survival actions applies to FTCA claims).  Plaintiffs cite no authority holding that the limitation on pain-and-suffering damages set forth in Arizona's survival statute can be disregarded in an FTCA action, and the Court has located no such authority.  Accordingly, any recovery on the Estate's survival claims asserted in Counts Three, Four, Five, Seven, and Eight of the FAC is limited to damages sustained by Raymond Mattia from the time of his initial injury until his death, and excludes damages for pain and suffering.

Plaintiffs' FAC does not plausibly allege that Raymond Mattia suffered any damages other than pain-and-suffering damages between the time of his initial injury and his death.  Proof of actual damages is a necessary element of a negligence claim.  *See Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007); *see also Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 926 (Ariz. 2024) (nominal damages unavailable on a negligence claim because proof of actual damages required).  Accordingly, the Court will dismiss Plaintiffs' negligence claims in Counts Five and Eight.[2]  However, the United States has not adequately established that the FAC's failure to allege recoverable damages is fatal to the other survival claims asserted in the FAC.  *See Johnson v. Pankratz*, 2 P.3d 1266,

---

[2] Because the Court is dismissing Counts Five and Eight for a failure to allege recoverable damages, the Court declines to address the United States' other arguments concerning Plaintiffs' negligence claims.  (*See* Doc. 28 at 7-9.)

1  1268 (Ariz. App. 2000) (proof of damages is not a necessary element of an assault or

2  battery claim); *Betts v. Bodnar*, No. 1 CA–CV 15–0008, 2016 WL 1273391, at *2 (Ariz.

3  App. Mar. 31, 2016) (same).

### 2.  Administrative Claim—Sum Certain Requirement

5         The United States argues that this Court lacks subject-matter jurisdiction over the

6  Estate's survival claims and Annette's intentional infliction of emotional distress claim,

7  because Plaintiffs' administrative claim did not sufficiently demand a sum certain for

8  each of the claims.  (Doc. 28 at 10-12.)  Plaintiffs note that their administrative claim

9  demanded $14,000,000.00 for wrongful death and $1,000,000.00 for personal injury, and

10 they argue that they were not required to enumerate each of their legal theories and

11 provide a sum certain value for each legal theory.  (Doc. 29 at 3-4.)

12        A plaintiff must administratively exhaust an FTCA claim prior to bringing suit.

13 *See* 28 U.S.C. § 2675(a).  This administrative exhaustion requirement is jurisdictional.

14 *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000).  The purposes of the FTCA's

15 administrative exhaustion requirement are to "ease court congestion[,] . . . avoid

16 unnecessary litigation[,] . . . expedite the fair settlement of tort claims asserted against the

17 United States[,]" and "provide for more fair and equitable treatment" of claimants.

18 *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 778–79 (9th Cir.

19 1984) (en banc) (internal quotation marks omitted).  The exhaustion requirement is not

20 intended "to provide a basis for a regulatory checklist which, when not fully observed,

21 permits the termination of claims regardless of their merits."  *Blair v. IRS*, 304 F.3d 861,

22 868 (9th Cir. 2002) (internal quotation marks omitted).

23        To administratively exhaust a claim, a claimant must submit to the appropriate

24 federal agency "(1) a written statement sufficiently describing the injury to enable the

25 agency to begin its own investigation, and (2) a sum certain damages claim."  *Warren*,

26 724 F.2d at 780; *see also* 28 U.S.C. § 2675(b).  "[T]he notice requirement under section

27 2675 is minimal[.]"  *Goodman v. United Stat*es, 298 F.3d 1048, 1055 (9th Cir. 2002).  A

28 plaintiff's administrative claim must provide sufficient information to allow an agency to

investigate, *Warren*, 724 F.2d at 780, but the claim need not state "with great specificity the legal theories to be asserted in the eventual FTCA action," *Broudy v. United States*, 722 F.2d 566, 568–69 (9th Cir. 1983).

Ninth Circuit authority provides limited guidance with respect to whether each plaintiff in a multi-plaintiff FTCA action must provide a separate sum certain for his or her respective claims in order to administratively exhaust the claims. In *Caidin v. United States*, the FTCA plaintiff filed an administrative claim on behalf of a class without providing the requisite evidence to show that he was a duly authorized agent or representative of the purported class members. 564 F.2d 284, 286 (9th Cir. 1977). In the administrative claim, the plaintiff provided a sum certain for the class but did not give any "indication of the specific damages" at issue in his individual claim, rendering the administrative claim "of no use in guiding settlement talks" with the plaintiff individually. *Id.* at 287. Accordingly, the Ninth Circuit found that the plaintiff had failed to satisfy the FTCA's sum certain requirement with respect to his individual claim. *Id.*

"*Caidin*'s holding centered around the fact that the plaintiff was not an authorized agent or legal representative of the other purported class members." *McDonald v. U.S. Postal Serv.*, 582 F. Supp. 3d 682, 687 (D. Ariz. 2022). Because the plaintiff's lack of authorization removed the other class members from the action, and the administrative claim gave no indication of what portion of the damages amount represented the plaintiff's individual damages, the plaintiff had "essentially omitted any statement of his own damages." *Blair*, 304 F.3d at 867 (discussing *Caidin*). The Court did not address in *Caidin* whether the damages amount asserted in the plaintiff's administrative claim "would have satisfied the sum certain damages requirement had [the] plaintiff been authorized to file claims on behalf of the other class members." *McDonald*, 582 F. Supp. 3d at 687.

Unlike in *Caidin*, Plaintiffs in the above-captioned matter did not file an administrative claim on behalf of a class that they were unauthorized to represent, without giving any indication of the damages at issue in their individual claims. Instead,

- 8 -

Plaintiffs filed an administrative claim on behalf of themselves and provided specific sum-certain amounts that they were claiming as damages for wrongful death and personal injury. Given the divergence between the facts of *Caidin* and the present matter, *Caidin* is of little guidance.

Ninth Circuit authority also provides limited guidance as to whether a plaintiff must state a separate sum certain for each particular claim to be asserted in an eventual FTCA action. In *Blair v. Internal Revenue Service*, the plaintiff specified a sum certain for wage loss in his administrative claim, but he did not specify a sum certain for medical expenses. 304 F.3d at 865–66. The United States argued that the plaintiff's failure to specify a sum certain for medical expenses divested the district court of jurisdiction over the entire FTCA action. *Id.* at 864, 866. The Ninth Circuit rejected that argument, finding that the district court had jurisdiction over the claim for wage loss, though not over the claim for medical expenses. *Id.* at 866–69. *Blair* indicates that FTCA plaintiffs must provide a separate sum certain in their administrative claim for each category of damages. But interpreting *Blair* to stand for the proposition that a plaintiff must provide a sum certain for each particular legal claim to be asserted in an eventual FTCA action would contradict Ninth Circuit precedent that an administrative claim need not "state with great specificity the legal theories to be asserted in the eventual FTCA action." *Broudy*, 722 F.2d at 568–69.

Here, Plaintiffs' administrative claim contained "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Warren*, 724 F.2d at 780. The sum-certain damages claim was apportioned between specific categories of damages, with $14,000,000.00 apportioned for wrongful death and $1,000,000.00 apportioned for personal injury. The $1,000,000.00 sum certain specified for personal injury was not further subdivided and apportioned to specific legal theories, but Plaintiffs were not required to state their legal theories with that degree of specificity in the administrative claim. *See Broudy*, 722 F.2d at 568–69. The Court further finds that Plaintiffs' failure to apportion the $1,000,000.00

sum certain for personal injury between the Estate's survival claims and Annette's intentional infliction of emotional distress claim does not deprive this Court of jurisdiction over those claims. In *McDonald*, the court held that the United States' "ability to make intelligent settlement decisions was not undermined by the uncertainty surrounding" how a sum certain damages "figure would be divided between the two claimants"—the estate and the individual plaintiff—"and among the claim's various subdivisions." 582 F. Supp. 3d at 688–89. The same is true here. Plaintiffs' administrative claim provided sufficient information for the United States to begin its own investigation and to make intelligent settlement decisions, and it therefore satisfied the notice requirement of 28 U.S.C. § 2675.

## B. Individual Defendants' Motion to Dismiss

The Individual Defendants argue that no *Bivens* remedy exists for the claims asserted against them and that, even if a *Bivens* remedy exists, they are entitled to qualified immunity. (Doc. 31.)

### 1. *Bivens* Remedy

In *Bivens*, the Supreme Court recognized an implied cause of action for money damages directly under the Fourth Amendment against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him at his home. 403 U.S. at 389, 397. The Supreme Court recognized implied causes of action under the Constitution twice more over the following decade. *See Davis v. Passman*, 442 U.S. 228 (1979) (congressional staffer's Fifth Amendment sex discrimination claim); *Carlson v. Green*, 446 U.S. 14 (1980) (federal prisoner's Eighth Amendment inadequate medical care claim). In the years since, "expanding the *Bivens* remedy" has become "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotation marks omitted). However, the Supreme Court has not "dispense[d] with *Bivens* altogether." *Egbert v. Boule*, 596 U.S. 482, 491 (2022).

Now, when analyzing a proposed *Bivens* claim, courts engage in a two-step inquiry. *Egbert*, 596 U.S. at 492. First, the court must determine whether the claim

1    "presents a new *Bivens* context," and, if it does, the court must determine whether "there
2    are special factors indicating that the Judiciary is at least arguably less equipped than
3    Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at
4    492 (internal quotation marks omitted).    If a proposed *Bivens* claim presents a new
5    context, and "there is any rational reason (even one) to think that Congress is better suited
6    to weigh the costs and benefits of allowing a damages action to proceed," then expansion
7    of *Bivens* is prohibited. *Id.* at 496 (internal quotation marks and emphasis omitted).

8                **a. Fourth Amendment Excessive Force**

9            The Individual Defendants concede that "*Bivens* itself involved the Fourth
10   Amendment," but they argue that Plaintiffs' Fourth Amendment claim presents a new
11   context because it involves a new category of defendants.    (Doc. 31 at 6-7.)    Plaintiffs
12   argue that their claim of excessive force is a permissible *Bivens* claim because the Border
13   Patrol agents at issue in this case were assisting local law enforcement on a general
14   criminal matter rather than engaging in work with a nexus to immigration enforcement.
15   (Doc. 32 at 4-7.)[3]

16           The Supreme Court has twice declined to extend *Bivens* to create a damages
17   remedy against Border Patrol agents for alleged excessive force. *See Hernandez v. Mesa*,
18   589 U.S. 93 (2020); *Egbert*, 596 U.S. 482.    But in both cases, the Border Patrol agents at
19   issue were "carrying out Border Patrol's mandate to interdict persons attempting to
20   illegally enter or exit the United States or goods being illegally imported into or exported
21   from the United States." *Egbert*, 596 U.S. at 494 (internal quotation and alteration marks
22   omitted).    The Court found that "regulating the conduct of agents at the border
23   unquestionably has national security implications," and the "risk of undermining border
24   security provides reason to hesitate before extending *Bivens* into this field." *Hernandez*,
25   589 U.S. at 108.

26   ─────────────────
     [3] Plaintiffs appear to argue both that their excessive force claim does not present a new
27   context and that, even if it does, expansion of *Bivens* is permissible.    (*See* Doc. 32.)
     Although Plaintiffs state in their Response that their "claim of excessive force against
28   Defendants represents a new context," it appears based on the surrounding language that
     this sentence contains a typographical error, and that Plaintiffs intended to say the claim
     does not represent a new context.  (*See id.* at 4.)

Here, as in *Bivens*, Plaintiffs allege that the Individual Defendants violated the Fourth Amendment by using unreasonable force against Raymond Mattia, without probable cause to believe that he had committed a crime. Furthermore, as in *Bivens*, Plaintiffs allege that the Individual Defendants were engaged in a general criminal investigation. In contrast to the Border Patrol agents in *Hernandez* and *Egbert*, the Individual Defendants are not alleged to have been investigating immigration violations or attempting to interdict persons or goods from illegally entering or exiting the United States. Because the agents were not engaged in law enforcement activities involving border security, this case does not extend *Bivens* into the field of border security, nor does the case implicate the foreign relations and national security concerns at issue in *Hernandez* and *Egbert*. Because the agents here, like in *Bivens*, were engaged in a general criminal matter, Plaintiffs' Fourth Amendment claim does not extend *Bivens*.

Because the Fourth Amendment claim does not extend *Bivens*, the Court need not "evaluate if there are special factors indicating that Congress would be better suited to create a damages remedy," nor "consider alternative remedial structures." *Kennedy v. Massachusetts*, 643 F. Supp. 3d 253, 259 (D. Mass. 2022); *see also Kidd v. Mayorkas*, 645 F. Supp. 3d 961, 970 (C.D. Cal. 2022) (a "finding of no new context [i]s sufficient to end the inquiry").

### b.  Violation of the Right to Familial Association

The Individual Defendants argue that Plaintiffs' claim for violation of the constitutional right to familial association presents a new context and that special factors counsel against extending *Bivens* to encompass such a claim, because authorizing family member claims would increase the number of claims against federal officers, thereby producing increased costs and new consequences that Congress is better positioned to evaluate. (Doc. 31 at 6; Doc. 33 at 7-8.) Plaintiffs argue that their *Bivens* claim for violation of the right to familial association should proceed because the Supreme Court has recognized a fundamental liberty interest in familial association and plaintiffs may assert claims under 42 U.S.C. § 1983 for violation of that right. (Doc. 32 at 7-8.)

Although there is a constitutionally protected liberty interest in familial association, the Supreme Court has never authorized a *Bivens* action to redress a violation of that right. *K.B. v. Perez*, 664 Fed. App'x 756, 758 (10th Cir. 2016). Accordingly, a claim for violation of the right to familial association presents a new *Bivens* context. *See Egbert*, 596 U.S. at 498 ("a new context arises when there is a new constitutional right at issue" (internal quotation marks omitted)). Expanding *Bivens* to encompass such a claim "could lead to unintended, unpredictable, and far-reaching consequences," including a potential wave of litigation brought by family members. *K.B.*, 664 Fed. App'x at 759. Accordingly, special factors counsel against expansion of the *Bivens* remedy to encompass claims for violation of the right to familial association. *Id.* (declining to imply cause of action for violation of the right to familial association).

### 2.  Qualified Immunity

The Individual Defendants argue that the FAC fails to plead valid constitutional claims for excessive force because video footage shows that their use of force against Raymond Mattia was objectively reasonable. (Doc. 31 at 10-16.) They further argue that no clearly established law prohibited their conduct. (*Id.* at 17.) They urge the Court to consider the video footage at issue on the grounds that it is incorporated into Plaintiffs' Complaint, it is an appropriate subject of judicial notice, and it blatantly contradicts Plaintiffs' claims. (*Id.* at 4-5, 10-16.)

Plaintiffs argue that the Court must take as true the FAC's factual allegations in evaluating the Individual Defendants' claim of qualified immunity, and that the selectively edited video footage of the incident does not contradict those factual allegations. (Doc. 32 at 9-13.) Plaintiffs further argue that it is clearly established that law enforcement agents cannot shoot and kill an unarmed, compliant person who poses no danger. (*Id.* at 13-15.)

When evaluating an officer's claim of qualified immunity, a court must consider: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a statutory or constitutional right, and (2) whether the

unlawfulness of the conduct was clearly established at the time. *Brosseau v. Haugen*, 543 U.S. 194, 197–98 (2004); *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). If the officer's conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known," then the officer is entitled to qualified immunity. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). With respect to a claim of excessive force, qualified immunity shields an officer "unless existing precedent 'squarely governs' the specific facts at issue" and moves the case "beyond the otherwise 'hazy border between excessive and acceptable force.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 13, 18 (2015)).

Determining whether an officer's use of force is reasonable under the Fourth Amendment requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," considering the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

At the time of Raymond Mattia's death, it was clearly established that "an officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Indeed, "few things in our case law" are as "clearly established as the principle that an officer" may not fatally shoot an unarmed suspect absent probable cause to believe the suspect "'poses a threat of serious physical harm, either to the officer or to others.'" *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011) (quoting *Garner*, 471 U.S. at 11). Furthermore, it was also clearly established that "an unreasonable mistake in the use of deadly force against an unarmed, nondangerous suspect violates the Fourth Amendment." *Id.* at 1129. Plaintiffs' FAC alleges that Defendants shot Raymond Mattia even though he was unarmed, nondangerous, and complying with their commands. (Doc. 24 at 3 ¶¶ 13-15.) The Individual Defendants do not dispute that they would not be entitled to qualified

1    immunity if the allegations of Plaintiffs' FAC are accepted as true.  Instead, Defendants

2    argue that body camera footage of the incident refutes the allegations of Plaintiffs' FAC

3    and shows that their use of force against Raymond Mattia was reasonable under the

4    circumstances.

5          Generally, a district court cannot consider evidence outside the pleadings in ruling

6    on a Rule 12(b)(6) motion to dismiss.  *United States v. Ritchie*, 342 F.3d 903, 907 (9th

7    Cir. 2003).    The Court may "consider certain materials—documents attached to the

8    complaint, documents incorporated by reference in the complaint, or matters of judicial

9    notice—without converting the motion to dismiss into a motion for summary judgment."

10   *Id.* at 908.    "The overuse and improper application of judicial notice and the

11   incorporation-by-reference doctrine, however, can lead to unintended and harmful

12   results."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  "If

13   defendants are permitted to present their own version of the facts at the pleading stage—

14   and district courts accept those facts as uncontroverted and true—it becomes near

15   impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible'

16   claim for relief."  *Id.* at 999 (quoting *Iqbal*, 556 U.S. at 678).

17         Although a "court may take judicial notice of matters of public record," the court

18   "cannot take judicial notice of facts contained in such public records."  *Id.* at 999.  If the

19   facts are "subject to varying interpretations, and there is a reasonable dispute as to what"

20   they establish, then judicial notice is improper.  *Id.* at 1000.  Furthermore, a court may

21   consider body camera footage to be incorporated by reference if a "complaint refers to,

22   and quotes from, the footage," but the court must "construe any ambiguities in the video

23   footage in the light most favorable" to the plaintiff in ruling on a Rule 12(b)(6) motion to

24   dismiss.  *Mayfield v. City of Mesa*, 131 F.4th 1100, 1104 (9th Cir. 2025).

25         Here, Plaintiffs' FAC does not mention the body camera footage at issue.  It is not

26   clear whether some of the FAC's factual allegations were derived from the footage.

27   Furthermore, it is unclear if the compilation of footage has been selectively edited.  Even

28   assuming the footage is an appropriate subject of judicial notice and/or that it is

incorporated by reference in the complaint, the body camera footage does not, as the Individual Defendants contend, blatantly contradict Plaintiffs' claims. To the contrary, a reasonable factfinder could determine that the footage is consistent with Plaintiffs' claims. The footage shows that agents approached Raymond Mattia with their guns drawn as he stood outside his home. The footage does not contain any indication that the agents had probable cause or even reasonable suspicion to believe Raymond Mattia was the subject of the report of shots fired that they were investigating. Upon encountering Raymond Mattia, the agents began shouting conflicting commands. Raymond Mattia threw his sheathed hunting knife away from himself when ordered to drop it. He did not make any verbal threats, and he was not attempting to flee. He removed his hand from his pocket when ordered to do so. Agents then fired a barrage of bullets at him without prior warning. Construing all ambiguities in the light most favorable to Plaintiffs, the footage is consistent with the FAC's allegations that Defendants fatally shot an unarmed, nonviolent, compliant man within minutes of encountering him outside his home.

Because there is a reasonable dispute concerning the facts shown in the body camera footage, it would be improper at this stage for the Court to accept as true the Defendants' interpretation of those facts. Instead, the Court assumes as true the factual allegations of Plaintiffs' FAC for purposes of evaluating the Individual Defendants' Rule 12(b)(6) Motion to Dismiss. Based on the factual allegations of the FAC, the Individual Defendants are not entitled to qualified immunity on Plaintiffs' excessive force claim.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

1      **IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 28, 31) are

2  **partially granted and partially denied**, as set forth above.  The Motions are granted

3  with respect to Counts Two, Five and Eight of the First Amended Complaint, and those

4  counts are **dismissed**.  The Motions are otherwise denied.

5      Dated this 7th day of August, 2025.

6

7

8

9                                                    _____

10                                                   Honorable Rosemary Márquez
                                                     United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28