**RYAN W. STITT**
California State Bar No. 273651
**TOMMY H. VU**
California State Bar No. 273760
**STITT VU TRIAL LAWYERS APC**
185 W F St., Ste. 100-K
San Diego, California 92101
Telephone: (619) 255-0553
rstitt@stittvu.com
tvu@stittvu.com

**TIMOTHY A. SCOTT**
California State Bar No. 215074
**MARCUS S. BOURASSA**
California State Bar No. 316125
**MCKENZIE SCOTT PC**
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
tscott@mckenziescott.com
mbourassa@mckenziescott.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ANNETTE MATTIA, et al.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 24-CV-252-TUC-RM<br><br>**PLAINTIFFS' LRCiv 37.1 STATEMENT**<br><br>Hon. Rosemary Marquez |

## I. Introduction.

Plaintiffs propounded nine interrogatories ("SROG") pursuant to Fed. R. Civ. P. 33, and the United States responded to each interrogatory, but none of the responses were verified. Plaintiffs further challenge the sufficiency of the unverified response to SROG 7 and 9. Pursuant to LRCiv 37.1(b), Plaintiffs are not including all of the Defendant's SROG responses in this supplemental statement, since none were verified. However, Plaintiffs challenge the substance of the

response to SROG 7 and 9, and those responses are included below in numbered paragraphs pursuant to LRCiv 37.1(a).

## II. Separate Statement of Discovery Requests, Responses and Alleged Deficiency.

1. SROG 7: Describe each command given to Raymond Mattia during the incident, including the exact words used, the person who gave the command, and the approximate time the command was given.

2. SROG 7 Answer: The answer is lengthy and includes photos and formatting that is not easy to replicate in this document. The complete answer is attached hereto as Exhibit B.

3. SROG 7's response by the United States is deficient because the request expressly asks for each command's words, speaker, and approximate time. The response supplies counsel's descriptions and timestamps but not the speakers. Footnote 1 defers identifying the speakers, and commands recalled but not audible on the recording, to future discovery without any clear explanation for what future discovery is necessary to identify the missing information. The United States should speak to the agents present and endeavor to identify who said what and when. The inquiry concerns participants in this incident, not every federal employee. Rule 33(d) permits reliance on specified business records only when the answer can be derived from them and the burden is substantially the same for either party. Producing recordings does not supply missing speaker identifications or establish that Plaintiffs are equally able to recognize the agents' voices.

4. SROG 9: Describe all criminal offenses YOU suspected Raymond Mattia of committing when YOU responded to his home on May 18, 2023.

5. SROG 9 Answer: The United States objects to this discovery request on the grounds that: (1) the request is overly broad because the instructions to Plaintiffs' discovery define the term "YOU" to include any agent of the United States; (2) the request constitutes a compound question (and separate interrogatory)

to the extent that it requires an answer from each responding Border Patrol agent, and the answers by each responding Border Patrol Agent may differ; (3) it would be unduly burdensome to require the United States to respond on behalf of all responding Border Patrol agents; and (4) the burden of deriving or ascertaining the answer from each responding Border Patrol agent will be substantially the same for either party.

Subject to and without waiving the foregoing objections, Section 287(a)(3) of the INA, codified at 8 U.S.C. § 1357(a)(3), grants USBP legal authority to patrol the U.S.-Mexico border within 25 miles of the international boundary to prevent illegal entry into the United States. Additionally, 8 U.S.C. § 1357(a)(5)(B) permits immigration officers and employees to make arrests "for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony." Unlawful acts under the laws of the United States involving the possession of a firearm can include, without limitation, those enumerated by Congress in 18 U.S.C. § 922, including, without limitation, subpart (g).

The incident occurred approximately .06 miles north of the U.S.-Mexico border. The report by TOPD dispatch to USBP Tucson Sector dispatch concerning shots fired in the Menagers Dam Village on May 18, 2023, does not make clear whether the shots were fired by an alien, lawful permanent resident, or United States citizen, or whether the person who had fired the shots was lawfully permitted to possess a firearm or in violation of 18 U.S.C. § 922, including, without limitation, subpart (g). Therefore, at the time that TOPD requested assistance, it was not known definitively whether USBP's involvement would include an investigation of a crime or arrest under Title 8. Simply put, TOPD reported shots fired within USBP's patrol area and requested assistance in responding.

6. SROG 9's response by the United States is deficient because the

response recites statutory powers and possible firearm offenses and explains that the dispatch report did not establish citizenship or firearm eligibility. It does not identify the offenses agents actually suspected Mr. Mattia of committing. Possible offenses that unknown circumstances might implicate do not answer that question.

7. RFA[1] 8: Admit that at no time before YOU approached Raymond Mattia on May 18, 2023, did YOU receive any report of injury related to the call seeking assistance for shots fired earlier that evening.

8. RFA 8 Response: ADMIT ____ DENY ____RESPONSE: The United States objects to this discovery request on the grounds that: (1) the request is overly broad because the instructions to Plaintiffs' discovery define the term "YOU" to include any agent of the United States; (2) the request constitutes a compound question to the extent that it requires an answer from each individual agent of the United States, and the answers by each individual agent of the United States may differ; and (3) it would be unduly burdensome to require the United States to respond on behalf of all agents of the United States.

Subject to and without waiving the foregoing objections, the United States admits that Mr. Mattia received commands from law enforcement, including TOPD Officer Randle and Border Patrol agents, but denies Request for Admission No. 8 insofar as it suggests that Mr. Mattia was specifically ordered to "remove" his hand from his "jacket pocket." The United States does not have sufficient information to truthfully admit that Mr. Mattia was specifically ordered to "remove" his hand from his "jacket pocket." However, the body-worn camera (BWC) footage disclosed with the United States' First Supplemental Disclosure Statement evidences that law enforcement, including TOPD Officer Randle and Border Patrol agents, gave numerous commands to Mr. Mattia before the discharge of any firearm, see, e.g.,

[1] Request for Admission ("RFA").

USA-000016, and it does not appear from the BWC footage that the specific command was given to Mr. Mattia to "remove" his hand from his "jacket pocket."

9. RFA 8's response by the United States is deficient because it does not admit or deny the question. The response disputes the precise words "remove" and "jacket pocket." Yet the answer to SROG 7 identifies "put your hands out of your fucking pocket" at approximately 39:27-39:28 and "hands out of your pocket" at approximately 39:28-39:29, citing USA-000016. The request does not require the command to use the literal verb "remove." Plaintiffs clarified this point for the United States, but it declined to supplement its answer. The United States should answer the question and provide whatever qualifier is necessary for it to succinctly answer the question.

10. RFA 9: Admit YOU shot and killed Raymond Mattia during the incident described in the COMPLAINT.

11. RFA 9 Response: ADMIT ____ DENY ____ RESPONSE: The United States objects to this discovery request on the grounds that: (1) the request is overly broad because the instructions to Plaintiffs' discovery define the term "YOU" to include any agent of the United States; (2) the request constitutes a compound question to the extent that it requires an answer from each individual agent of the United States, and the answers by each individual agent of the United States may differ; and (3) it would be unduly burdensome to require the United States to respond on behalf of all agents of the United States.

Subject to and without waiving the foregoing objections, the United States admits that Border Patrol agents Scott Whitehouse, Dan Sifuentes, and Ivan Torralva fired their service weapons, Mr. Mattia was shot by at least one Border Patrol agent, and Mr. Mattia died after being shot. The United States is presently without information sufficient to admit or deny whether Mr. Mattia died because of injuries sustained from a bullet fired by Scott Whitehouse, Dan Sifuentes or Ivan

Torralva, or any combination thereof.

12. RFA 9's response by the United States is deficient because the response admits the three agents fired, that at least one Border Patrol agent shot Mr. Mattia, and that he died afterward, but does not answer causation. The request asks whether the United States, through its agents, shot and killed him; it does not require attribution of a fatal round to a particular shooter. The United States answer the collective causation question after inquiry into reasonably available medical and investigative evidence. If the information remains insufficient, the United States should provide the explanation required by Rule 36(a)(4), distinguishing an inability to identify the fatal shooter from an inability to determine whether the agents' gunfire caused death.

13. RFA 10: Admit that Raymond Mattia was unarmed when YOU shot and killed him.

14. RFA 10 Response: ADMIT ____ DENY ____ RESPONSE: The United States objects to this discovery request on the grounds that: (1) the request is overly broad because the instructions to Plaintiffs' discovery define the term "YOU" to include any agent of the United States; (2) the request constitutes a compound question to the extent that it requires an answer from each individual agent of the United States, and the answers by each individual agent of the United States may differ; (3) it would be unduly burdensome to require the United States to respond on behalf of all agents of the United States; and (4) the term "unarmed" is vague and ambiguous in the context of this case.

Subject to and without waiving the foregoing objections, the United States admits that Border Patrol agents Scott Whitehouse, Dan Sifuentes, and Ivan Torralva fired their service weapons, Mr. Mattia was shot by at least one Border Patrol agent, Mr. Mattia died after being shot, and a firearm was not found on Mr. Mattia's "person" after he was shot.

Subject to and without waiving the foregoing objections, the United States denies Request for Admission No. 10 insofar as it suggests that Mr. Mattia did not have any object in his hand when he was shot or that one or more Border Patrol agents did not perceive Mr. Mattia to be armed with a firearm when he was shot.

15. RFA 10's response by the United States is deficient because the response substitutes the agents' perceptions and the presence of an object in Mr. Mattia's hand for whether he was actually armed. To resolve the stated ambiguity, Plaintiffs clarified for the United States that "unarmed" concerns actual possession of a weapon at the time of the shooting, not an agent's belief that an object was a firearm. The United States declined to amend its answer after that clarification and stood on its objections.

16. RFA 12: Admit that Raymond Mattia did not have a firearm on his person when YOU shot and killed him.

17. FRA 12 Response: ADMIT ____ DENY ____ RESPONSE: The United States objects to this discovery request on the grounds that: (1) the request is overly broad because the instructions to Plaintiffs' discovery define the term "YOU" to include any agent of the United States; (2) the request constitutes a compound question to the extent that it requires an answer from each individual agent of the United States, and the answers by each individual agent of the United States may differ; and (3) it would be unduly burdensome to require the United States to respond on behalf of all agents of the United States.

Subject to and without waiving the foregoing objections, the United States admits that Border Patrol agents Scott Whitehouse, Dan Sifuentes, and Ivan Torralva fired their service weapons, Mr. Mattia was shot by at least one Border Patrol agent, Mr. Mattia died after he was shot, and a firearm was not found on Mr. Mattia's "person" after he was shot.

18. RFA 12's response by the United States is deficient because the

response admits only that no firearm was found on his person afterward. The answer should respond to whether he actually had a firearm on his person when shot, after reasonable inquiry into the available evidence. The request does not ask what the agents believed or whether a firearm was elsewhere in the home. If the United States cannot answer the requested fact, it should explain that inability under Rule 36(a)(4), rather than substituting the result of the later search.

19. RFA 13: Admit that Raymond Mattia complied with YOUR command to drop the knife he was holding when he exited his home.

20. RFA 13 Response: ADMIT ____ DENY ____ RESPONSE: The United States objects to this discovery request on the grounds that: (1) the request is overly broad because the instructions to Plaintiffs' discovery define the term "YOU" to include any agent of the United States; (2) the request constitutes a compound question to the extent that it requires an answer from each individual agent of the United States, and the answers by each individual agent of the United States may differ; and (3) it would be unduly burdensome to require the United States to respond on behalf of all agents of the United States.

Subject to and without waiving the foregoing objections, the United States denies Request for Admission No. 13 insofar as it suggests Mr. Mattia was specifically ordered to "drop the knife." As evidenced by the body-worn camera (BWC) footage disclosed with the United States' First Supplemental Disclosure Statement, law enforcement, including TOPD Officer Randle and Border Patrol agents, gave numerous commands to Mr. Mattia before the discharge of any firearm, see, e.g., USA-000016, and it does not appear from the BWC footage that the specific command was given to "drop the knife." The United States further denies Request for Admission No. 13 insofar as it suggests that Border Patrol agents perceived Mr. Mattia to be holding a knife during the encounter and that all responding Border Patrol agents saw him exit his home.

21. RFA 13's response by the United States is deficient because the response focuses on whether the exact words "drop the knife" were spoken and whether every agent perceived a knife or saw Mr. Mattia exit his home. SROG 7 instead identifies commands to "put that down for me" and "put it down, put it down". The answer should state whether Mr. Mattia complied with the command concerning that object, admitting the portions that are true and separately identifying any qualification. Plaintiffs provided this clarification to the United States and it declined to amend its answer. The Court should compel an answer to the question.

22. RFP[2] 2: Any and all documents relating to complaints by members of the public, suspects, or colleagues, against Defendants Whitehouse, Sifuentes, or Torralva for excessive force, dishonesty, or a failure to record and document enforcement actions.

23. RFP 2 Response: The United States objects to this discovery request on the grounds that: (1) it seeks information that is not relevant to the claims or defenses asserted in this action; and (2) constitutes a compound and separate discovery request as to each identified Border Patrol agent. Subject to and without waiving the foregoing objections, the United States responds as follows.

As to BPA Whitehouse, there are no responsive documents.

As to BPA Torralva, an excessive force allegation (use of body only) was made against him in connection with an immigration-related arrest in April of 2023. His management concluded the allegations were not supported by the evidence, and the matter was closed with no action. Since that incident is not relevant to the claims and defenses asserted in this case (i.e., whether a reasonable person in the individual Defendants' positions on May 18, 2023, would have believed that deadly physical

[2] Request for Production ("RFP").

force was immediately necessary to protect himself against the use or attempted use of unlawful deadly physical force, see A.R.S. § 13-405(A)), the United States will not be producing any documents concerning that unrelated incident.

As to BPA Sifuentes, an excessive force allegation (use of body only) was made against him in connection with an immigration-related arrest in April of 2013. His management concluded the allegations were not supported by the evidence, and the matter was closed with no action. Since that incident is not relevant to the claims and defenses asserted in this case (i.e., whether a reasonable person in the individual Defendants' positions on May 18, 2023, would have believed that deadly physical force was immediately necessary to protect himself against the use or attempted use of unlawful deadly physical force, *see* A.R.S. § 13-405(A)), the United States will not be producing any documents concerning that unrelated incident.

24. RFP 2's response by the United States is deficient because an unsustained disposition does not itself make the underlying file undiscoverable. These records may bear on force assessments, reporting accuracy, corrective instruction, or credibility, not merely propensity. Further, Plaintiffs agree that Sifuentes' incident from 2013 is temporarily dated and need not be produced. Even with this limitation, the United States declined to amend its response and the Court should compel production.

25. RFP 4: Any and all documents relating to other instances in which Defendants Whitehouse, Sifuentes, or Torralva discharged their firearms outside of a training or certification environment.

26. RFP 4's Response: RESPONSE: The United States objects to this discovery request on the grounds that: (1) it seeks information that is not relevant to the claims or defenses asserted in this action; (2) it constitutes a compound and separate discovery request as to each identified Border Patrol agent; and (3) it is vague and ambiguous as to whether it only seeks information related to the

discharge of their service firearms during their employment as Border Patrol agents.

Subject to and without waiving the foregoing objections, the United States responds as follows in the limited context of the discharge of a service firearm within the scope of their employment as a Border Patrol agent.

As to BPAs Whitehouse and Torralva, there are no responsive documents.

As to BPA Sifuentes, he discharged his service firearm in March of 2021, after a Mexican national drove through and evaded inspection at the Lukeville Port of Entry, failed to yield, and then attempted to "carjack" a Border Patrol vehicle. The suspect was not shot and was taken into custody without injury. Since that incident is not relevant to the claims and defenses asserted in this case (i.e., whether a reasonable person in the individual Defendants' positions on May 18, 2023, would have believed that deadly physical force was immediately necessary to protect himself against the use or attempted use of unlawful deadly physical force, see A.R.S. § 13-405(A)), the United States will not be producing any documents concerning that unrelated incident.

27. RFP 4's response by the United States is deficient because the response identifies Sifuentes' March 2021 service-firearm discharge during an incident involving an alleged attempted carjacking of a Border Patrol vehicle, but withholds the records as irrelevant and notes that the suspect was not struck. The absence of injury does not eliminate questions concerning the perceived threat, decision to fire, accuracy of the agent's account, or resulting instruction. At a minimum, this dispute concerns the identified on-duty service-firearm discharge, which falls within even the United States's stated interpretation of the request.

28. RFP 16: Produce all of YOUR communications between Defendants Whitehouse, Sifuentes and Torralva related to the COMPAINT.

29. RFP 16's Response: RESPONSE: The United States objects to this discovery request on the grounds that: (1) it is vague and ambiguous as to whether

it is asking for communications among the individual Defendants related to the Complaint itself or, alternatively, related to the incident that forms the basis of the Complaint; and (2) it purports to require it to produce documents that may be in the possession of the individual Defendants but that are not contained in the records of the agency involved (CBP).

Subject to and without waiving the foregoing objections, the agency involved (CBP) does not have any record of any communication between the individual Defendants regarding the Complaint itself or the incident that forms the basis of the Complaint except for files that have already been produced. See dispatch audio produced with the United States' First Supplemental Disclosure Statement bates labeled as USA-000030 (with audible date/time references), and a condensed version produced bates labeled as USA-000029; see also all body-worn camera (BWC) footage produced with the United States' First Supplemental Disclosure Statement that may contain communications between these individuals.

30. RFP 16's response by the United States is deficient because it substitutes the contents of CBP's existing files for the broader inquiry into the United States' possession, custody, or control. The request must be read together with the served definitions and instructions. Definition 2 expressly includes the named agents and persons acting on behalf of the United States within "YOU" and "YOUR"; Definition 3 includes employees and government agencies within "PERSON"; and Instructions 4 and 5 address responsive documents held by representatives or agents, regardless of physical location. Definition 1 defines "COMPLAINT" by reference to its facts and allegations. Accordingly, RFP No. 16 seeks communications among Whitehouse, Sifuentes, and Torralva concerning the shooting and the related events and investigation. The response itself addresses communications concerning both the pleading and the underlying incident, demonstrating that the United States understands the subject matter of the request.

Rule 34(a)(1) reaches documents and electronically stored information within a party's possession, custody, **or control**. The Ninth Circuit defines control as the legal right to obtain documents upon demand. *In re Citric Acid Litigation*, 191 F.3d 1090, 1107–08 (9th Cir. 1999). Thus, stating that a communication is not presently contained in CBP's records does not answer whether the United States has the legal right to obtain it from the agents or another relevant custodian.

The United States should be compelled to attempt to obtain the records. Alternatively, with Court approval, Plaintiffs can serve a Fed R. Civ. P. 45 subpoena on the agents in advance of their depositions. Plaintiffs are also open to other reasonable solutions to obtain relevant messages in advance of deposing the three agents who shot and killed Mr. Mattia.

31. RFP 19: Produce all messages on the Microsoft Teams channel created in relation to the COMPAINT and referenced in BATES USA-003345.

32. RFP 19's Response: RESPONSE: The United States does not have any documents responsive to this request, since the Teams channel was not used for messaging purposes. Rather, the Teams channel served as a file repository for OPR where OPR Special Agents with access were able to place files gathered related to the incident. To the extent that the act of depositing of a file constitutes a "message," the files that were deposited in the repository were attached to OPR's Use of Force Case Closing Report produced with the United States' First Supplemental Disclosure Statement (*see* USA-003624–3714) with the exception of a U.S. Border Patrol Significant Event Brief, which is produced herewith bates labeled as USA-004124.

33. RFP 19's response by the United States is deficient because its own records identify the Teams channel as being for "relevant files/info" and if only files were shared on the Teams channel there still should be a record of the messages. The United States should produce the Teams channel communications

instead of its blanket refusal to do so.

34. RFP 21: Produce all written agreements, reports, or memoranda between YOU and the Tohono O'odham Nation that YOU claim provide legal justification for YOUR agreement to assist the Tohono O'odham Nation Police in responding to Raymond Mattia's home on May 18, 2023.

35. RFP 21's Response: RESPONSE: The United States objects to this discovery request on the grounds that it seeks information that is not relevant to the claims or defenses asserted in this action.

Subject to and without waiving the foregoing objections, the agency involved (CBP) does not have any written documents responsive to this request.

36. RFP 21's response by the United States is deficient because this request is limited to written agreements, reports, or memoranda with the Tohono O'odham Nation that the United States claims justify its agreement to assist TOPD in responding to Mr. Mattia's home. Such documents directly concern the asserted justification for that assistance. The response says only that CBP does not have responsive written documents; it does not say whether the United States relies on such an instrument held by another relevant federal custodian. The United States should respond on behalf of the United States after reasonable inquiry and produce responsive documents within its possession, custody, or control. If the United States relies on no responsive written instrument, the response should say so expressly.

//

//

//

//

//

//

//

Dated: October 22, 2026

Respectfully submitted,

*s/ Ryan W. Stitt*

Ryan W. Stitt
Tommy Vu
STITT VU TRIAL LAWYERS APC

Timothy Scott
Marcus Bourassa
MCKENZIE SCOTT PC

Attorneys for Plaintiffs