**RYAN W. STITT**
California State Bar No. 273651
**TOMMY H. VU**
California State Bar No. 273760
**STITT VU TRIAL LAWYERS APC**
185 W F St., Ste. 100-K
San Diego, California 92101
Telephone: (619) 255-0553
rstitt@stittvu.com
tvu@stittvu.com

**TIMOTHY A. SCOTT**
California State Bar No. 215074
**MARCUS S. BOURASSA**
California State Bar No. 316125
**MCKENZIE SCOTT PC**
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
tscott@mckenziescott.com
mbourassa@mckenziescott.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ANNETTE MATTIA, et al.,<br>Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA, et al.,<br>Defendants. | Case No. 24-CV-252-TUC-RM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**<br><br>Hon. Rosemary Marquez |

## I. Introduction.

After receiving months of extensions, the United States served incomplete discovery responses and no interrogatory verifications. Its subsequent verification of only three answers does not cure the remaining deficiencies. The Court should require complete, verified substantive answers, responsive admissions, and

production following reasonable inquiry.[1]

## II. The United States must verify its SROG answers, and its argument that interviewing witnesses constitutes a discrete subpart for each witness interview is wholly unsupported by Fed. R. Civ. P. 33, the Advisory Committee Notes, and caselaw.

There is no dispute that SROG answers must be verified, but the United States answered all the SROG questions and verified none. It has now verified three of its choosing, but revises to verify the remainder because it would be too burdensome. The United States' position — that interviewing multiple on-scene agents to compile an answer to a single interrogatory constitutes a separate "discrete subpart" for each agent, thereby justifying a refusal to verify — is not supported by the text of Fed. R. Civ. P. 33, the Advisory Committee Notes, or case law within the Ninth Circuit. Rule 33(b)(1)(B) expressly requires a governmental agency to furnish information *available to the party*, and the process of gathering that information from multiple agents is the mechanism of compliance, not a separate interrogatory sub-part. Courts within the Ninth Circuit have consistently held that unverified interrogatory answers are legally insufficient, have no evidentiary value, and must be supplemented with proper verification. The government's argument conflates two entirely distinct provisions of Rule 33 — the numerical sub-part limit under Rule 33(a)(1) and the verification requirement under Rule 33(b)(3) and (b)(5) — and no court has accepted the theory that the internal information-gathering process of an entity respondent generates discrete sub-parts.

---

[1] The United States faults Plaintiffs for filing this Motion to Compel before receiving its written responses on October 22nd. However, Plaintiffs provided the United States with their written position on the discovery responses on October 5 and the parties met and conferred thereafter. During the meet and confer, the United States provided its response orally to what it would agree to change and not change; thus, there was no reason to continue to delay filing the instant motion on responses where there was an impasse.

**A. SROG answers must be verified, and the United States answered all nine SROG questions, but verified none initially and then agreed to verify three of its choosing.**

The United States answered all nine SROG questions but failed to verify any. When pressed by Plaintiffs on the failure to verify any SROG, the United States responded by stating that it would be too burdensome to verify all of the SROGs it had already answered and it offered to verify three of its choosing.

The United States did provide verifications to SROG 1, 2, and 8, but the rules do not allow it to pick and choose the questions it wishes to verify. The fact that the United States was able to provide a written response to all nine SROGs undercuts the argument that it is too burdensome to answer them. Further, if the United States' math is accurate and SROG 7 constitutes three dozen discrete subparts, why did it answer SROG 8 and 9, and further verify the answer to SROG 8? This inconsistency in the United States' response coupled with the fact that it has already answered the questions substantially undercuts the strength of its position.

The United States' position on its refusal to verify most of its SROG responses is not justified, and the Court should compel verification of all nine SROG responses.

**B. SROG questions that require an entity, like the United States, to interview multiple witnesses to form a response do not constitute discrete subparts for each witness that must be interviewed.**

The United States misunderstands what constitutes a discrete subpart under Fed. R. Civ. P. 33(a)(1) because it treats each witness it must speak with as a separate subpart. No case cited by the United States supports its position, and the Advisory Committee Notes directly undercut its position.

SROG 7 states:

> Describe each command given to Raymond Mattia during the incident, including the exact words used, the person who gave the command, and the approximate time the command was given.

LRCiv 37.1 Statement, ¶ 1.

SROG 9 states:

> Describe all criminal offenses YOU suspected Raymond Mattia of committing when YOU responded to his home on May 18, 2023.

LRCiv 37.1 Statement, ¶ 4. The Advisory Committee Notes to Rule 33 state:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. **However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.**

Fed. R. Civ. P. 33 Advisory Committee's Note to 1993 amendment (subdivision (a)) (emphasis added).

Consistent with the Advisory Committee Note, Plaintiffs propounded SROG 7 to compel a response for commands given to Mr. Mattia. The videos are convoluted and it is not clear who said the commands contained on the video. Plaintiffs are unable to identify the agents by voice, and the SROG was designed to clarify the commands given to Mr. Mattia. The fact that SROG 7 "requests that the time, place, persons present, and contents be stated separately for each such communication" does not render each witness present a separate discrete subpart under Rule 33(a)(1). *Id*. Similarly, SROG 9 asks for the offenses that the responding agents suspected Mr. Mattia of committing when they responded, and the Committee Note supports the Plaintiffs' position that "a question asking about communications of a particular type should be treated as a single interrogatory. . .". *Id*.

The United States provided no case support for its position, and Plaintiffs' counsel's research has uncovered none. The refusal to verify SROG 7 and 9, especially after they have been answered and presumably just need to be verified,

is unsupported by the rule, notes, and caselaw. Therefore, the United States should be compelled to verify SROG 7 and 9, and the Court should further order fee shifting under Rule 37 because the United States is not substantially justified in its position.

**III. The United States must admit or deny the substance of the RFAs.**

The United States repeatedly objects that the requests require separate responses from every responding agent. Opp. at 10–13. They do not. They seek admissions from the United States concerning conduct by its agents during one incident. Differences in individual knowledge may warrant qualifications, but do not excuse reasonable inquiry or an answer addressing the requested fact. Fed. R. Civ. P. 36(a)(4); *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246–47 (9th Cir. 1981).

**RFA No. 8**. The United States argues that agents cannot recall the commands without reviewing the evidence and that answering according to the request's substance would improperly "redefine or redraft" it. Opp. at 10. But the request does not quote a particular command; it asks whether agents ordered Mr. Mattia to remove his hand from his jacket pocket. The government's own SROG 7 response identifies commands directing his hands out of his pocket. Answering whether those commands conveyed the requested instruction requires neither perfect unaided recollection nor rewriting. Rule 36(a)(4) expressly requires a response to the substance of the matter, with any necessary qualification concerning the garment or speaker.

**RFA No. 9**. The United States admits agents shot Mr. Mattia and that he died afterward, but argues that it need not adopt the medical examiner's findings and that Plaintiffs may determine which agent fired a fatal bullet themselves. Opp. at 11. This confuses collective causation with attribution of a particular round. The request asks whether the United States, through its agents, shot and killed him—

not which agent inflicted a fatal wound. Nor does the medical examiner's status as a county employee excuse considering readily obtainable medical evidence. The United States must answer the causation question after reasonable inquiry or explain specifically why it cannot.

**RFA No. 10**. The United States defends its qualified denial because Mr. Mattia held an object and agents may have perceived a firearm. Opp. at 11–12. Neither proposition answers whether he was actually armed. Possession of an object does not itself establish possession of a weapon, and perceived possession is distinct from actual possession. The United States may preserve its reasonable-perception defense while separately answering whether Mr. Mattia possessed a weapon when shot.

**RFA No. 12**. The United States maintains that admitting no firearm was found afterward sufficiently qualifies its response and that no further admission is required. Opp. at 12. Plaintiffs do not contend that the later search mechanically compels an admission. They contend that the response answers a different question. The request concerns possession when the agents fired. The United States must admit or deny that proposition, or explain why the available evidence remains insufficient after reasonable inquiry.

**RFA No. 13**. The United States characterizes the request as multiple admissions concerning Mr. Mattia's departure from his home, possession of a knife, and receipt of a command, and again objects that every agent would need to provide a narrative. Opp. at 12–13. Those details identify the episode; the requested admission concerns compliance with the command. The request does not require every agent to have witnessed each circumstance or heard identical words. If the United States disputes a factual premise, it should identify that dispute and answer the remaining substance. If it contends that throwing the object was noncompliance, it may expressly deny compliance on that basis rather than deny implications about

exact wording or unanimous agent perceptions.

The Court should compel amended answers under Rule 36(a)(6), not an order requiring the United States to concede genuinely disputed facts.

**IV. The United States' objections to the RFPs do not resolve the identified deficiencies, and the Court should compel production.**

Rule 34 requires a reasonable inquiry to locate responsive, nonprivileged documents within the responding party's possession, custody, or control, including information reasonably available from its employees and agents. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006). Generalized objections do not suffice; the resisting party must explain and support its objections with specificity. *Id.* at 188; *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013). An objection to part of a request also must identify the disputed portion and permit production of the remainder. Fed. R. Civ. P. 34(b)(2)(C). Accordingly, the United States' prior production does not resolve whether it reasonably searched for, and improperly withheld, the particular records still at issue.

**RFP No. 2**. The United States acknowledges complaints against Torralva and Sifuentes but asserts that they are irrelevant because they involved bodily force during immigration arrests, including one incident more than ten years earlier. Opp. at 13. Those distinctions may justify limits; they do not establish that every part of the investigative files is irrelevant. The pertinent inquiry includes whether the records contain findings about the agents' factual accounts or corrective instruction bearing on their conduct here. Plaintiffs seek the identified investigative and disposition records for that assessment, not admission of prior complaints as propensity evidence. The government's separate representation that no dishonesty or failure-to-document complaints exist narrows those categories, but does not resolve production of the acknowledged excessive-force files. *Id.* at 14.

**RFP No. 4**. The United States objects that the request could encompass private firearm use and separately argues that Sifuentes's prior official discharge

cannot bear on his perceived threat or decision to fire here. Opp. at 14. Any concern about private firearm use can be addressed by limiting production to official discharges. As to relevance, Plaintiffs seek records of the identified incident, including any resulting instruction or corrective action concerning threat identification and firearm use. Such instruction may bear on the agent's subsequent conduct even though the earlier incident involved different circumstances. At minimum, the Court should consider that narrower production rather than deny the request categorically.

**RFP No. 16**. The United States states that CBP presently possesses no additional communications, disclaims control over communications made personally on private devices, and suggests serving the individual defendants directly. Opp. at 15. The first statement addresses possession, not the full scope of control; the second assumes the character of communications without identifying any inquiry into whether responsive exchanges concerned official business or were collected by investigators. Plaintiffs seek a reasonable search for responsive communications within the United States' possession, custody, or control, including investigative copies. They do not assert that employment alone gives the government control over every private message. Because the motion identifies the stay as an obstacle to direct discovery, the government's suggested alternative also supports Plaintiffs' request for express authorization to obtain any remaining communications directly, consistent with that stay.

**RFP No. 19**. The United States represents that the Teams channel was never used for messaging, that its repository files were attached to the produced OPR report except for one separately produced document, and that nothing remains to be produced. Opp. at 15–16. The pertinent question is whether that representation rests on a reasonable examination of the channel and retained records. Plaintiffs seek completion of that inquiry if it has not occurred. If it has, and the

representations are complete, Plaintiffs do not seek production of nonexistent messages or duplicate files.

**RFP No. 21**. The United States argues that TOPD requested assistance verbally, that CBP has no responsive written documents, and that no other agency's personnel responded. Opp. at 16. A verbal request does not exclude an existing written agreement governing such assistance, and the identity of the responding officers does not necessarily identify every custodian of governing agreements. The appropriate inquiry is whether responsive documents exist among reasonably likely custodians, not whether another agency sent officers. Plaintiffs seek a response on behalf of the United States confirming that reasonable inquiry and producing any responsive records; they do not demand an unrestricted search of unrelated agencies.

The Court should compel production of the outstanding responsive records.

## V. The Court should expeditiously order the United States to respond or adjust the scheduling order to permit a response.

Plaintiffs noticed depositions of the three BPA's who shot and killed Mr. Mattia on December 7-10, 2026. Plaintiffs are hopeful that the additional discovery can be provided in advance of those depositions so that they can be used to prepare and question the agents. The Court should order the United States to comply quickly with the outstanding discovery issues, in particular since they were served in May. Alternatively, the Court should extend the case deadlines sufficiently to permit Plaintiffs to receive the outstanding discovery and to use it during the discovery process.

## VI. Conclusion.

The United States sought and obtained months of extensions to provide its discovery responses, and its failure to verify a single SROG is clearly deficient. Plaintiffs raised the SROG deficiencies along with the rest of the RFA and RFP issues, and Defendants elected to stand on unsupported objections. The Court

should compel responses and further rule that the objections were not substantially justified.

Dated: November 12, 2026

Respectfully submitted,

*s/ Ryan W. Stitt*

Ryan W. Stitt
Tommy Vu
STITT VU TRIAL LAWYERS APC

Timothy Scott
Marcus Bourassa
MCKENZIE SCOTT PC

Attorneys for Plaintiffs